[Cite as *State v. McMahan*, 2026-Ohio-2992.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

DAVID TODD MCMAHAN,

    DEFENDANT-APPELLANT.

CASE NO. 17-25-19

OPINION AND
JUDGMENT ENTRY

Appeal from Shelby County Common Pleas Court
Trial Court No. 21 CR 000264

Judgment Affirmed

Date of Decision: August 3, 2026

APPEARANCES:

    *David McMahan* Appellant

    *Emily J. Mothmiller* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, David T. McMahan ("McMahan"), appeals the November 7, 2025 judgment entry of the Shelby County Court of Common Pleas, overruling his motion to withdraw pleas and vacate sentences. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} On August 26, 2021, a Shelby County Grand Jury indicted McMahan on 17 counts of pandering obscenity involving a minor or impaired person, in violation of R.C. 2907.321(A)(1), felonies of the second degree; and one count voyeurism, in violation of R.C. 2907.08(B), a misdemeanor of the second degree. On November 30, 2021, a plea hearing was held. During this hearing, the prosecutor set forth the terms of the negotiated plea agreement on the record, stating: "[McMahan] will be pleading guilty to Counts One through Five of the indictment and at the appropriate time, the State would dismiss . . . the balance of the charges. . . ." (Nov. 30, 2021 Tr. at 3.) There was no agreement as to a sentencing recommendation. Counsel for McMahan subsequently affirmed the prosecutor's statement as an accurate recitation of the agreement. After this exchange, the trial court engaged in a lengthy colloquy with McMahan, which included the following:

[Trial Court]:     Except for what's been said today in court, has anyone
                   promised you anything to cause you to enter this plea of
                   guilty?

[McMahan]:         No, sir.

(Nov. 30, 2021 Tr. at 5.) McMahan entered guilty pleas to Counts One through Five, each an offense of pandering obscenity involving a minor or impaired person in violation of R.C. 2907.321(A)(1). Pursuant to a negotiated-plea agreement, the remaining charges were dismissed. The charges to which McMahan pleaded guilty involved a single 14-year-old female victim. The dismissed charges involved multiple alleged victims, including McMahan's minor daughter, who was the alleged victim in counts six through nine.

{¶3} The trial court accepted McMahan's guilty pleas and, on January 10, 2022, sentenced him to an indefinite prison term of four to six years on each count to run consecutively. These counts resulted in an aggregate sentence of 20 to 22 years. During the sentencing hearing, McMahan sat in the jury box, separated from his trial counsel. Additionally, two victim impact statements were read into the record. One statement was from a representative of McMahan's daughter, whose charges had been dismissed as part of the plea agreement. McMahan's trial counsel objected to this victim impact statement, but the trial court overruled the objection and permitted the statement. The trial court advised McMahan of his appellate rights at the conclusion of the sentencing hearing.

{¶4} Following sentencing, McMahan did not pursue a timely direct appeal or seek post-conviction relief. Nearly four years later, on August 29, 2025, he filed a motion to set aside the judgment of conviction and withdraw his guilty pleas, pursuant to Crim.R. 32.1. The trial court denied the motion without a hearing on November 7, 2025. On December 3, 2025, McMahan timely appealed the court's ruling.

*Discussion*

{¶5} McMahan raises nine assignments of error. Because he failed to file a direct appeal or seek post-conviction relief within the required timelines, our review is limited by the doctrine of res judicata to considering only the denial of his motion to withdraw his pleas. *See State v. Dent*, 2014-Ohio-3141, ¶ 4 (8th Dist.) ("The doctrine of res judicata . . . prohibits all claims raised in a Crim.R. 32.1 postsentence motion to withdraw a guilty plea that were raised or could have been raised on direct appeal."); *see also State v. Mackey*, 2014-Ohio-5372, ¶ 15 (4th Dist.) (finding the doctrine of res judicata bars claims raised in a Crim.R. 32.1 postsentence motion involving a defendant failing to file a direct appeal or to claims that the plea is invalid because it was not knowingly, intelligently, and voluntarily made). We will not entertain McMahan's attempt to circumvent appellate rules and deadlines, thereby "gaming the system," by bootstrapping a myriad of untimely sentencing challenges to a postsentence motion and subsequent order that could, and should, have been raised on direct appeal years ago. *See State v. Williamson*, 2015-Ohio-5135, ¶ 9 (8th Dist.) (Ohio courts have established that "'bootstrapping,' the utilization of a subsequent order to indirectly and untimely appeal a prior order that was never directly appealed, is procedurally anomalous and inconsistent with the appellate rules that contemplate a direct relationship between the order from which the appeal is taken and the error assigned as a result of that order.")

{¶6} Because the following assignments of error could have been raised in a direct appeal or a timely postconviction relief motion pursuant to R.C. 2953.21, they are, therefore, overruled:

## First Assignment of Error

**The trial court deprived the Appellant of his due process rights by failing to recognize the violation of Appellant's rights and the manifest injustice resulting from separation of counsel, i.e., "Constructive Deprivation of Counsel".**

## Second Assignment of Error

**The trial court deprived the Appellant of his due process rights by failing to recognize the violation of Appellant's rights, the manifest injustice, and prejudice resulting from the introduction of new matters in spite of Appellant's attorney's objection.**

## Fourth Assignment of Error

**The trial court erred to the prejudice of the Appellant's due process rights by failing to correct the violation of Appellant's due process rights, and the resulting manifest injustice, based upon ineffective assistance of counsel via counsel's failure to present substantive mitigation.**

## Sixth Assignment of Error

**The trial court violated due process, resulting in manifest injustice, by depriving appellant of his right to fully develop his claim of the State breaching its plea agreement by not remaining silent regarding sentencing.**

## Seventh Assignment of Error

**The trial court violated due process, resulting in manifest injustice, by depriving appellant of his right to fully develop his claim of the State breaching its plea agreement by not keeping references to his daughter out of the proceedings.**

**Ninth Assignment of Error**

**R.C. 2929.14(C)(4) is unconstitutional as written and as applied as violating the Defendant's Sixth Amendment and due process rights, causing the Defendant's guilty plea to have been unknowingly and involuntarily made.**

{¶7} McMahan's third, fifth, and eighth assignments of error directly address the trial court's dismissal of his motion to vacate the judgment and withdraw his pleas. Accordingly, we will address the merits of those assignments of error.

**Third Assignment of Error**

**The trial court ignored standards regarding post-sentence withdraw of guilty pleas, abused its discretion, violated Appellant's due process rights, by failing to accept the Appellant's statements and claims as true for the purpose of determining whether to grant, and by denying the requested evidentiary hearing.**

{¶8} Under his third assignment of error, McMahan contends the trial court was required to accept his claims as true and grant an evidentiary hearing on his motion. McMahan claims his Crim.R. 32.1 motion "made claims of breach of plea agreement, ineffective counsel, constructive deprivation of rights, and deprivation of substantive due process," and the trial court was obligated by law to presume his allegations to be true and, therefore, grant an evidentiary hearing. (Appellant's Brief at 12). Regarding the constitutional claims, McMahan argues that he was seated in the jury box forty feet away from his attorney during sentencing, and was, therefore, constructively deprived of counsel and unable to participate in his own defense. Regarding his ineffective assistance claims, McMahan asserts that trial counsel failed to enforce an alleged off-the-record plea

agreement. Specifically, he contends that the State promised to remain silent at sentencing rather than recommend a sentence, and agreed to exclude any information regarding the dismissed counts during the sentencing hearing. Furthermore, McMahan claims counsel was ineffective for failing to present detailed mitigation evidence and for failing to object to the reading of his daughter's victim impact statement.

*Standard of Review*

{¶9} Generally, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "[A] defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). "As a rule, manifest injustice relates to some fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hall*, 2003-Ohio-6939, ¶ 12 (10th Dist.). "An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *State v. Francis*, 2004-Ohio-6894, ¶ 32. "The motion [to withdraw] is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at 264. A post-sentence motion to withdraw is granted only under extraordinary circumstances. *Id*.

*Analysis*

**{¶10}** While a trial court must hold a hearing on a pre-sentence motion to withdraw a guilty plea to evaluate if a reasonable and legitimate basis exists, no such requirement applies to a motion filed after sentencing. *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). If the motion to withdraw is filed after sentencing, "a hearing is not required if the facts alleged by the defendant, and accepted as true by the court, would not require that the guilty plea be withdrawn." *State v. Blatnik*, 17 Ohio App.3d 201, 204 (6th Dist. 1984). Because the standard governing post-sentence withdrawal is manifest injustice, the facts a defendant alleges must, if accepted as true, be sufficient to establish manifest injustice in order to compel a hearing. *See State v. Williams*, 2007-Ohio-630, ¶ 17 (8th Dist.) ("The lower court is not obligated to hold an evidentiary hearing where the defendant has failed to show manifest injustice."). "Generally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice." *State v. Rockwell*, 2008-Ohio-2162, ¶ 42 (5th Dist.). "The good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court." *Id.*

**{¶11}** In his brief, McMahan principally relies on *State v. Hamed*, 63 Ohio App.3d 5, 7 (8th Dist. 1989), for the proposition that once a defendant's allegations, if accepted as true, would compel withdrawal, "an evidentiary hearing is *required* (and not merely discretionary)." (Emphasis sic.) (Appellant's Brief at 13). *Hamed* does stand for that proposition, and the operative question under *Hamed* is whether the facts alleged, accepted as true, would require the plea to be withdrawn. *Hamed*, at *7; *see also Blatnik*, 17 Ohio

App.3d at 204. McMahan errs in assuming that his sworn affidavit automatically satisfies that threshold. The determination of whether a defendant's allegations, even accepted as true, actually compel withdrawal under the manifest injustice standard is itself a matter within the trial court's discretion. *Rockwell* at ¶ 42. The good faith, credibility, and weight of the movant's assertions remain for the trial court to assess. *Id*.

{¶12} *Hamed's* mandatory hearing requirement arises only if the court determines that threshold is met; if the court properly finds the allegations fall short, the court may deny the motion without a hearing. *See Blatnik* at 204. (A defendant's "bare assertion does not, in and of itself, constitute manifest injustice."). The dispositive inquiry, therefore, is whether McMahan's assertions, even assuming their truth for purposes of this threshold determination, satisfy the manifest injustice standard of Crim.R. 32.1. *Id*. ("Since a showing of manifest injustice is absolutely necessary in order for a court to grant a post-sentence Crim.R. 32.1 motion, absent such a showing, the motion must be denied.") They do not.

{¶13} Crim.R. 11(F) requires that "[w]hen a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court." The trial court thoroughly reviewed transcripts of both the plea hearing and the sentencing proceeding before denying McMahan's motion. The plea agreement under which McMahan entered his guilty pleas, the dismissal of the remaining charges in exchange for pleas to Counts One through Five, was stated on the record in open court as

Crim.R. 11(F) requires. Specifically, the agreement was set forth in McMahan's written petition to enter a plea of guilty, and both the prosecutor's recitation of the agreement and defense counsel's confirmation of its terms were made in open court on the record. The court found, however, that McMahan's claim of additional undisclosed promises, namely to remain silent regarding sentencing recommendations and to exclude information regarding the dismissed counts, was contrary to the record. During the plea colloquy, the court inquired whether any promises had been made to McMahan beyond what was stated on the record, and McMahan responded that there were not. Indeed, in addition to this contradiction regarding the plea agreement, the trial court found that McMahan's post-hoc affidavit was riddled with factual and legal errors throughout. Because the record firmly establishes the absence of any agreement beyond the stated terms, the trial court did not abuse its discretion in rejecting McMahan's claims of a breached plea agreement and the attendant claims of ineffective assistance of counsel.

{¶14} McMahan urges that the trial court could not rely on the plea colloquy to defeat his affidavit because, he argues, it is common practice for defense counsel to instruct clients to deny any promises were made, even when they were. We reject this contention. A defendant's, in-court representations, made contemporaneously with the plea and in direct response to the trial court's inquiry, carry substantial indications of reliability that a post-hoc affidavit, submitted nearly four years later for the purpose of undoing that same plea, cannot overcome. *See State v. Cobb*, 2026-Ohio-1639, ¶ 14 (9th Dist.) (trial court not unreasonable in believing "that [defendant] was telling the truth when he stated at the plea

hearing that he was not threatened or coerced into pleading and that he was not promised anything in exchange for his plea," rather than crediting later contradictory testimony). Where a defendant's subsequent affidavit directly contradicts the statements he made in open court during the plea colloquy, a trial court does not abuse its discretion in crediting the contemporaneous record. *See Rockwell*, 2008-Ohio-2162, at ¶ 42. To accept McMahan's argument would render the protections of Crim.R. 11(F) and the plea colloquy a nullity, insulating any post-sentence claim of a secret agreement from refutation by the very record designed to prevent it.

{¶15} Even accepting McMahan's allegations as true for purposes of argument, the alleged errors do not rise to the level of manifest injustice required under Crim.R. 32.1. McMahan's claims regarding separation from counsel during the sentencing hearing, the presentation of his daughter's victim impact statement[1], and counsel's allegedly inadequate mitigation presentation all involve matters that were observable at the time of sentencing and could have been addressed through direct appeal or a timely post-conviction petition, and are therefore barred by res judicata. Setting aside the res judicata bar, McMahan has not demonstrated that these alleged errors constitute a fundamental flaw in the proceedings which resulted in a miscarriage of justice or was inconsistent with the demands of due process. Instead, McMahan makes broad assertions about due process, but never addresses a fundamental flaw in the proceedings and does not adequately describe how his due

---

[1] McMahan's assertion that trial counsel failed to object to the victim impact statement of his daughter's representative is contradicted by the record. The transcript of the sentencing hearing reflects that counsel did object; the trial court overruled the objection and permitted the statement. (Jan. 10, 2022 Tr. at 3.)

process rights were violated. Because McMahan's allegations, even accepted as true, would not require withdrawal of his guilty pleas, no evidentiary hearing was warranted. *See Blatnik*, 17 Ohio App.3d at 204.

{¶16} McMahan's third assignment of error is overruled.

## Fifth Assignment of Error

**The trial court prejudiced the Appellant's due process rights by its denial of Appellant's request for transcripts even though it prepared and quoted from them in judgment, resulting in manifest injustice.**

{¶17} In his fifth assignment of error, McMahan contends the trial court erred by failing to provide him with transcripts of the plea and sentencing hearings in connection with his Crim.R. 32.1 motion, despite the trial court having relied on those transcripts in rendering its decision.

{¶18} "[A]n indigent defendant is entitled to a transcript of evidence or its reasonable equivalent at public expense if, at the time he makes an application therefor, he is entitled either to a present appeal as of right from his conviction or has presently pending either an appeal or some comparable post-conviction remedy." *State ex rel. Partee v. McMahon*, 175 Ohio St. 243, 248 (1963). McMahan argues that "[a]lthough the Crim.R. 32.1 Motion, below, was not an appeal or post-conviction petition, *Partee* used the term 'inter alia,['] meaning there are other judicial proceedings in which the right to a transcript applies." (Appellant's Brief at 16.) McMahan's contention is false. The term "inter alia"

does not exist in *Partee*, nor does the opinion otherwise suggest that an indigent defendant is entitled to a transcript other than on appeal or on a postconviction petition.

{¶19} Even if it did, McMahan offers no alternative authority to support his assertion that an indigent defendant is entitled to a state-funded transcript for a Crim.R. 32.1 motion, relying solely on the fact that the trial court referenced the transcripts in its decision. However, the trial court's utilization of the transcripts in ruling on the motion is irrelevant to the threshold question of whether an indigent defendant possesses a legal entitlement to them at state expense, which is a right that is strictly prescribed by law. *Partee* does not extend this transcript right to a Crim.R. 32.1 motion, and we decline to do so here. *See State v. McKinney*, 2006-Ohio-5364, ¶ 8 (9th Dist.) (holding the trial court did not err in denying an indigent defendant's motion for a public-expense transcript in support of a Crim.R. 32.1 motion when the conviction was no longer subject to appellate review). As stated above, McMahan himself concedes that his Crim.R. 32.1 motion was not an appeal or post-conviction petition. Therefore, the trial court did not err when it declined to grant his request for a transcript relative to his Crim.R. 32.1 motion.

{¶20} We need not dwell further on this point. Pursuant to *Partee*, McMahan received the transcripts upon the filing of the appellate record in this appeal and has relied on them extensively in his briefing.

{¶21} McMahan's fifth assignment of error is overruled.

## Eighth Assignment of Error

**The trial court violated Appellant's due process rights by applying post-conviction standards and errantly determining that Appellant's 32.1 motion was untimely.**

{¶22} In his eighth assignment of error, McMahan contends the trial court erroneously determined his motion to vacate and withdraw his pleas was untimely, thereby violating his rights to due process. He contends that because Crim.R. 32.1 contains no explicit time limit for filing a post-sentence withdrawal motion, the trial court had no authority to dismiss his motion as untimely. We disagree.

### *Standard of Review*

{¶23} McMahan's eighth assignment of error presents both a legal question and a challenge to the trial court's exercise of discretion. To the extent McMahan argues the trial court applied an incorrect legal standard to his Crim.R. 32.1 motion, we review that question de novo. *State v. Parsons*, 2024-Ohio-3367, ¶ 6 (3d Dist.). We review the trial court's ultimate denial of the motion under an abuse-of-discretion standard. *Francis*, 2004-Ohio-6894, at ¶ 32.

### *Analysis*

{¶24} A postsentence motion to withdraw under Crim.R. 32.1 requires a showing of manifest injustice, meaning a defect so extraordinary that no other remedy reasonably available to the defendant could have provided redress. *State v. Redavide*, 2016-Ohio-7804, ¶ 11 (2d Dist.). McMahan has identified no flaw of that magnitude. His record-based claims could have been raised on direct appeal and are therefore barred by res

judicata as addressed above. To the extent McMahan's allegations depend on matters outside the record, those claims find their proper home not in Crim.R. 32.1 but in a post-conviction petition under R.C. 2953.21. *See State v. Wheeler,* 2002 Ohio App. LEXIS 207, *4 (2d Dist.) ("Matters outside the record that allegedly corrupted the defendant's choice to enter a plea of guilty or no contest so as to render the plea less than knowing and voluntary are proper grounds for an R.C. 2953.21 petition for post-conviction relief."). Whether a claim belongs in R.C. 2953.21 rather than Crim.R. 32.1 turns on the nature of the claim itself, specifically, whether it depends on matters outside of the record, and not on whether the defendant has satisfied the manifest injustice standard. The deadline for filing such a petition expired well before McMahan filed his motion in August 2025. We find no error of law in the trial court's disposition of McMahan's motion.

{¶25} Even if McMahan's claims were cognizable under Crim.R. 32.1, they would fail. McMahan filed his motion on August 29, 2025, nearly four years after his January 10, 2022 sentencing. He attributes this delay to his attorney, who became ill and ultimately passed away before filing any motion on his behalf. While this explanation is documented and unfortunate, it does not overcome the substantial delay or excuse McMahan's failure to pursue the timely remedies available to him. McMahan was advised of his appellate rights at the conclusion of the sentencing hearing. He could have filed a direct appeal within thirty days of the sentencing entry, a timely post-conviction petition within one year, or retained substitute counsel or filed pro se well before August 2025. That McMahan has pursued the present appeal pro se is itself evidence of his capacity to have done so within

the applicable timeframes. The death of retained counsel, while tragic, does not render otherwise untimely claims timely, particularly where the defendant was advised of his appellate rights and had multiple avenues for timely relief available to him. That delay weighs heavily against McMahan's motion under the credibility standard established in *State v. Smith,* whereby the delay between the occurrence of the alleged cause for withdrawal and the filing of a Crim.R. 32.1 motion is a "factor adversely affecting the credibility of the movant and mitigating against the granting of the motion." *Smith*, 49 Ohio St.2d at 264. Furthermore, the substantive claims fail under the manifest injustice standard as addressed under the third assignment of error, and the claims that could have been raised on direct appeal are barred by res judicata regardless of the procedural label attached to the dismissal. Accordingly, the trial court did not abuse its discretion in denying the motion.

{¶26} McMahan's eighth assignment of error is overruled.

*Conclusion*

{¶27} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued in the assignments of error, we affirm the judgment of the Shelby County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, and WALDICK, J. J., concur.**

-16-

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

    Mark C. Miller, Judge

    John R. Willamowski, Judge

    Juergen A. Waldick, Judge

DATED:
/jlm